UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AMBER GUERRA,

                                           Plaintiff,

                                                                     Case # 17-CV-6079-FPG

v.

                                                                     DECISION AND ORDER

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                                           Defendant.
_____

## INTRODUCTION

Amber Guerra brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 16. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits.

## BACKGROUND

On November 5 and 30, 2010, Guerra applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[1] 181-95. She alleged disability since May 1, 2009 due to an ovarian cyst, insomnia, bipolar disorder, panic attacks, and anxiety. Tr. 210. On April 3, 2012, Guerra and a vocational expert ("VE") testified via videoconference before Administrative Law

---

[1] References to "Tr." are to the administrative record in this matter.

1

Judge ("ALJ") MaryJoan McNamara. Tr. 9-67. On June 22, 2012, the ALJ issued a decision finding that Guerra was not disabled within the meaning of the Act. Tr. 73-84. On July 23, 2013, the Appeals Council denied Guerra's request for review. Tr. 1-7. Guerra appealed to this Court and her case was remanded by stipulation to the Commissioner for further administrative proceedings. *See Guerra v. Colvin*, 13-CV-6506-MWP, ECF Nos. 13, 14.

On September 8, 2016, Guerra and a VE testified at a second hearing via videoconference before ALJ Hope G. Grunberg. Tr. 728-68. On December 8, 2016, the ALJ issued a decision finding that Guerra was not disabled within the meaning of the Act. Tr. 643-61. This became the Commissioner's final decision because the Appeals Council did not assume jurisdiction of the case. *See* 20 C.F.R. §§ 404.984(a), 416.1484(a) (in cases remanded from district court for further proceedings, the ALJ's decision becomes the Commissioner's final decision unless it assumes jurisdiction). Thereafter, Guerra commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f).

3

If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Guerra's claim for benefits under the process described above. At step one, the ALJ found that Guerra had not engaged in substantial gainful activity since the alleged onset date. Tr. 646. At step two, the ALJ found that Guerra has the following severe impairments: lumbar degenerative disc disease, obesity, adjustment disorder with depressed mood and anxiety, depressive disorder, anxiety disorder with panic attacks, posttraumatic stress disorder ("PTSD"), excoriation disorder, borderline intellectual functioning, borderline personality disorder, and polysubstance abuse. Tr. 646-48. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 648-51.

Next, the ALJ determined that Guerra retains the RFC to perform light work[2] with additional limitations. Tr. 652-59. Specifically, the ALJ found that Guerra can occasionally kneel,

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

stoop, couch, and crawl; can understand, remember, and carry out simple and routine tasks; cannot perform work that requires a high-quota production-rate pace; and cannot interact with the public, but can occasionally interact with coworkers and supervisors. Tr. 652.

At step four, the ALJ determined that this RFC prevents Guerra from performing her past relevant work. Tr. 659. At step five, the ALJ relied on the VE's testimony and found that Guerra can adjust to other work that exists in significant numbers in the national economy given her RFC, age, education, and work experience. Tr. 659-61. Specifically, the VE testified that Guerra can work as a cleaner, bakery racker, and retail marker labeler. Tr. 660. Accordingly, the ALJ concluded that Guerra was not "disabled" under the Act. *Id.*

## II.   Analysis

Guerra argues that remand is required because the ALJ violated the treating physician rule.[3] ECF No. 13-1 at 24-28. Specifically, Guerra asserts that the ALJ did not provide "good reasons" for discounting the opinion of her treating physician Thundathil Abraham, M.D. The Court agrees.

### A.   Treating Physician Rule

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527); 20 C.F.R. § 416.927. Under this rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger v. Barnhart*, 335

---

[3] Guerra advances other arguments that she believes warrant reversal of the Commissioner's decision. ECF No. 13-1 at 22-24, 28-30. However, the Court will not address those arguments because it disposes of this matter based on the ALJ's violation of the treating physician rule.

5

F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

### B. Dr. Abraham's Opinion

On September 1, 2016, Dr. Abraham assessed Guerra's mental ability to perform work-related functions. Tr. 1026-30. He indicated that he had been treating Guerra once a month for over one year. Tr. 1026. He diagnosed her with several mental impairments, including major depression, recurrent; PTSD; anxiety and panic attacks; borderline personality disorder; and excoriation disorder. *Id.* Dr. Abraham also indicated that Guerra was taking several mental health medications that caused drowsiness, dizziness, and tiredness. *Id.*

Dr. Abraham opined that Guerra is precluded from carrying out short and simple instructions and maintaining attention for two hour segments for more than 20% of an eight-hour

workday. Tr. 1028. He further opined that Guerra is completely precluded from maintaining regular attendance and being punctual; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; accepting instructions and responding appropriately to supervisor criticism; and getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes. Tr. 1028-29. Throughout the medical assessment form, Dr. Abraham opined in five separate places that Guerra is unable to work. Tr. 1028-30.

     **C.     Failure to Provide "Good Reasons"**

The ALJ summarized Dr. Abraham's opinion and afforded it "little weight" because it (1) does not provide function-by-function limitations, and (2) is unsupported by Guerra's activities. Tr. 658.

First, the ALJ's statement that Dr. Abraham's opinion does not provide function-by-function limitations is incorrect. The form directed Dr. Abraham to rate Guerra's mental ability to perform 21 specific work-related functions for eight hours per day, five days per week in a regular competitive work setting for more than six consecutive months. Tr. 1028. Dr. Abraham had to assess Guerra's abilities in terms of a five-point scale, which was defined based on how many hours per workday Guerra could perform a given task. *Id.* Dr. Abraham completed the form in accordance with these instructions, and therefore he expressed his opinion in terms of function-by-function limitations.

Second, the ALJ discounted Dr. Abraham's opinion because he found it unsupported by Guerra's activities. Specifically, the ALJ stated that Guerra "testified her physical conditions limit her household chores, not her mental conditions." Tr. 658. This statement, without more, is

7

confusing, does not provide Guerra or the Court with a "good reason" for discounting Dr. Abraham's opinion, and does not rely on any of the factors the ALJ must consider when she weighs a treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The Commissioner attempts to support the ALJ's assertion that Guerra's activities contradict Dr. Abraham's opinion by arguing that his "numerous extreme limitations" are "inconsistent with [Guerra's] ability to live alone, perform numerous chores independently, maintain a romantic relationship, attend appointments regularly, occasionally socialize with friends, and go shopping." ECF No. 16-1 at 31.

First, the Commissioner may not substitute her own rationale when the ALJ failed to provide one. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.") (quotation marks and citation omitted). Second, it is unclear how these activities refute Dr. Abraham's assessed limitations and demonstrate that Guerra can perform work-related mental activities on a regular and continuing basis. *See* 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c); S.S.R. 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.").

### D. Remand for Calculation of Benefits

District courts are authorized to affirm, reverse, or modify the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for calculation of benefits is appropriate only in cases where the record "provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d

Cir. 2004). Courts must avoid "contribut[ing] any further to the delay of the determination of [a claimant's] application by remanding for further administrative proceedings" when remand is unnecessary. *Diaz ex rel. E.G. v. Comm'r of Soc. Sec.*, No. 06-CV-530-JTC, 2008 WL 821978, at *8 (W.D.N.Y. Mar. 26, 2008); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 310 (S.D.N.Y. 2004) (recognizing "delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability").

Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Green-Younger*, 335 F.3d at 106.

Dr. Abraham's opinion is supported by his treatment notes, which reflect that Guerra demonstrated anxious and depressed mood, increased stress, panic attacks, limited insight and judgment, mood instability, markedly diminished interest in activities, fatigue, inability to concentrate, indecisiveness, feelings of hopelessness, racing thoughts, irritability, and marked impairments in social, occupational, and interpersonal functioning. Tr. 1033, 1035-36, 1038, 1040-41, 1043-44, 1046.

Additionally, the other mental medical opinions of record, which were rendered by two state agency review physicians and a consultative examiner, do not undermine Dr. Abraham's opinion. Tr. 334-61, 538-84. Even if they did, "[t]he treating physician rule recognizes that a physician who has a long history with a patient is better positioned to evaluate the patient's disability than a doctor who observes the patient once for the purposes of a disability hearing." *Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (quotation marks and citation omitted). This rule is "even more relevant in the context of mental disabilities, which by their

9

nature are best diagnosed over time. Thus, while the ALJ can consider the opinions of [consulting medical sources], absent more compelling evidence[,] their opinions should not be given controlling weight over those of [a treating psychiatrist]." *Id.* (citation omitted) (alterations in original).

"Even where a treating physician's opinion is not entitled to 'controlling weight,' it is generally entitled to 'more weight' than the opinions of non-treating and non-examining sources." *Hamm v. Colvin*, No. 16CV936(DF), 2017 WL 1322203, at *17 (S.D.N.Y. Mar. 29, 2017) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); S.S.R. 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").[4] A consultative examiner's opinion is generally entitled to "little weight," because their examinations "are often brief, are generally performed without benefit or review of the claimant's medical history, and, at best, only give a glimpse of the claimant on a single day. Often, consultative reports ignore or give only passing consideration to subjective symptoms without stated reasons." *Hamm*, 2017 WL 1322203, at *17 (citing *Giddings v. Astrue*, 333 F. App'x 649, 652 (2d Cir. 2009) and *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 55 (2d Cir. 1992)).

Additionally, Guerra's Global Assessment of Functioning ("GAF")[5] score of 65 on June 14, 2011, to which the ALJ afforded "great weight," does not undermine Dr. Abraham's opinion.

---

[4] The Court notes that S.S.R. 96-2p was recently rescinded, however, the rescission is only effective for claims filed on or after March 27, 2017. *See* Rescission of Social Security Rulings 96-2p, 96-5p, & 06-3p, 2017 WL 3928305, at *1 (S.S.A. Mar. 27, 2017). Therefore, S.S.R. 96-2p still applies to Guerra's claim, which was filed in November of 2010.

[5] Mental health professionals use GAF scores to rate an individual's level of psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *See* Global Assessment of Functioning (GAF) Scale, *available at* https://www.albany.edu/counseling_center/docs/GAF.pdf (last visited Feb. 21, 2018). Guerra's score of 65 indicates that she has "mild symptoms" or "some difficulty in social, occupational, or school functioning," but that she is "generally functioning pretty well" and "has some meaningful interpersonal relationships." *Id.*

Tr. 484, 657-58. Courts in the Second Circuit have noted that GAF scores are of little probative value in the disability context. Although these scores are relevant, they do not necessarily contradict a medical source's opinion that the claimant is disabled, because GAF scores do "not have a direct correlation to the severity requirements in [the Commissioner's] disorders listings." *Seignious v. Colvin*, No. 6:15-cv-06065 (MAT), 2016 WL 96219, at *6 (W.D.N.Y. Jan. 8, 2016) (citations omitted).

Dr. Abraham's opinion that Guerra is precluded from maintaining attention for two-hour segments for more than 20% of an eight-hour workday and that she is completely precluded from maintaining regular attendance establishes that she is disabled. Tr. 1028. VE testimony revealed that an individual is unemployable if she is off task more than 10% of the workday or if she is absent more than one day per month. Tr. 764-66. Thus, additional proceedings would serve no purpose and would only further delay Guerra's claim, which has been pending for over seven years and was previously remanded from district court. Accordingly, the Court remands this matter solely for the calculation and payment of benefits.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is DENIED, and this matter is REMANDED to the Commissioner solely for calculation and payment of benefits. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 25, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court